# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLIFFORD L. GOULSBY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. CIV-21-289-GKF-SH |
| JANET DOWLING, *et al.*, | ) |
| Defendants. | ) |

## DEFENDANTS WERNER, DOWLING, MCINTURF AND PRYOR'S MOTION TO DISMISS WITH BRIEF IN SUPPORT

**COME NOW** Defendants Tammy Werner, Janet Dowling, Tyler McInturf and Thomas Pryor, and respectfully move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) for the reason that the Amended Complaint on file herein (Doc. 7) fails to state a claim upon which relief can be granted.

## STATEMENT OF THE CASE

Plaintiff is an inmate currently in the custody of the Oklahoma Department of Corrections and incarcerated at the Dick Conner Correctional Center (DCCC) where he is serving a life sentence for First Degree Murder. Defendants are employed by the Oklahoma Department of Corrections ("DOC") at the DCCC.

On February 27, 2021, Plaintiff was allegedly assaulted by three members of the Indian Brotherhood ("IBH") prison gang who had been housed in the Segregated Housing Unit (SHU) at DCCC but were able to exit their cells after tampering with their locks. Mr. Goulsby received immediate medical care for his injuries. In his Amended Complaint, Plaintiff alleges that the DOC failed to protect him because of its inmate housing and placement policies. Doc. 7, page 12. He specifically claims that DOC improperly housed

inmates of different races, security levels and gang affiliations together.  Plaintiff seeks money damages as well as an order requiring Defendants to undergo security training.  Doc. 1.  However, for reasons more fully set forth below, Plaintiff's claim must fail.  This brief relies upon the Court-ordered Special Report[1], filed in this action at Doc. 22.

## STANDARD FOR DISMISSAL

A complaint should be dismissed for failure to state a claim upon which relief can be granted when "it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id*. (quoting *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999)).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing … entitle[ment] to relief." The required "short and plain statement" must provide "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), (overruled on other grounds, *Twombly*, 550 U.S. at 562-563)). In order to show an "entitlement to relief" a plaintiff must plead "more than

---

[1] All references to page numbers in the Special Report are to the Bates numbering at the bottom of the Report.  When referring to page numbers of Plaintiff's Complaint, Defendants reference those numbers assigned by the electronic filing system.

2

labels and conclusions … ." *Twombly*, 550 U.S. at 555. The initial pleading must contain "[f]actual allegations [which are sufficient] to raise a right to relief above the speculative level." *Id*. In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face[ ]" not just conceivable. *Id*. at 570. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); see also *Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). Plaintiff must do more than make allegations of such a broad scope that they "encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247. Rather, plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id*. (quoting *Twombly*, 550 U.S. at 565 n. 10). Plausibility does not mean "likely to be true," it means that the allegations must be enough that if assumed to be true the plaintiff plausibly, not merely speculatively, has a claim for relief. *Id*.

Courts are required to construe pro se litigants' pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Even so, all parties must adhere to applicable procedural rules. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). "[A] *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). It is improper for a court to assume the role of advocate because a plaintiff is *pro se*. *Id.*

# ARGUMENT AND AUTHORITY

## PROPOSITION I

### PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ON HIS CLAIMS AGAINST DEFENDANTS.

Pursuant to the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Thus, a prisoner cannot sue concerning prison conditions without first exhausting all available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 733-34 (2001); 42 U.S.C. § 1997e(a). Exhaustion is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. *Woodford v. Ngo,* 548 U.S. 81 (2006); *Booth,* 532 U.S. at 741.

To properly exhaust, the prisoner must comply "with an agency's deadlines and other critical procedural rules...." *Ngo*, 548 U.S. at 90. "Simply presenting a defective or non-complying grievance...does not constitute exhaustion of remedies." *Brewer v. Mullin*, 130 F.App'x 264, 265 (10th Cir. 2005) (not selected for publication). Prisoners must exhaust remedies, even if doing so seems futile. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, a prisoner must timely exhaust each and every step of a prison system's grievance procedure in full compliance with the procedure's requirements; partial compliance is not sufficient. *Id.* Courts will only excuse failure to exhaust if prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Finally, the prisoner must complete the grievance process or there is no exhaustion of administrative remedies. *Id.*

4

## A. DOC'S Grievance Process

DOC Policy OP-090124, "Inmate/Offender Grievance Process," governs DOC offender complaints regarding incidences of prison life. Special Report (Doc. 22), Attachment 7, pages 64-88. Further, it provides the multi-step exhaustion process an offender must satisfy before filing suit. *Id.* According to OP-090124 (V), an offender must first attempt to informally resolve his complaint by talking with the appropriate staff member. If unsuccessful, then the offender must submit a Request to Staff ("RTS") to the appropriate staff member. *Id.* at part (V)(B). If the offender's complaint remains unresolved, the offender may begin the formal grievance procedure by submitting a Grievance to the Reviewing Authority. *Id.* at part (VI). If the complaint concerns a medical issue, the offender must submit the Grievance to the facility Correctional Health Services Administrator ("CHSA"). *Id.* at part (VI)(B)(1). Grievances that are of an emergency or sensitive nature can be submitted directly to the Reviewing Authority without informal resolution. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm or other irreparable harm. *Id.* at part (IX). If a grievance response fails to resolve the issue, the inmate should appeal to the Administrative Review Authority ("ARA"), or if the complaint concerns a medical issue, to the DOC"s Medical Administrative Review Authority. *Id.* at part (VIII).

## B. Plaintiff's Requests to Staff, Grievances and Appeals

Prior to commencement of this litigation, Plaintiff failed to exhaust administrative remedies on his claims against Defendants. Specifically, Plaintiff submitted no Request to Staff, Grievance or Appeal addressing his concerns about being improperly housed, excessive use of force, failure to protect, conspiracy, and any other concern, allegation

5

or request for relief set forth in his Complaint and Amended Complaint. *See* Memo from DCCC Law Librarian, indicating that Plaintiff has not submitted a Request to Staff "from 2018 to present." Doc. 22, Attachment 9, page 92. *See also* DCCC's 2021 redacted[2] Grievance Log. *Id.* at Attachment 10, page 94. Additionally, *see* Affidavit of DOC's Manager of the Administrative Review Authority, indicating that no grievances or appeals have been submitted by Plaintiff regarding him being assaulted, improper housing at DCCC, conspiracy to place him in danger, indifference to his safety or improper inmate risk assessments. *Id.* at Attachment 8, page 90.

In sum, Plaintiff failed to submit any Request to Staff, Grievance or Appeal regarding his complaints against Defendants. Accordingly, Plaintiff did not exhaust administrative remedies on his claims against Defendants. The PLRA's exhaustion requirement is mandatory, and courts are not authorized to dispense with it. *Beaudry v. Corr. Corp. of America*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). For all the foregoing reasons, this Court should find that Plaintiff failed to exhaust administrative remedies and dispose of all the claims pending against Defendants.

**PROPOSITION II**

**PLAINTIFF FAILS TO STATE A CLAIM FOR AN EIGHTH AMENDMENT VIOLATION.**

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily

---

[2] Because Plaintiff's name does not appear on the log and only non-party inmate names are on the log, all names appear redacted. Should the Court request, a non-redacted copy of the log can be submitted for *in camera* review.

6

harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir.2008). "Plaintiff bears the burden of showing, first, that his conditions of confinement are, objectively, sufficiently serious, and, second, that the … Officers were deliberately indifferent to his safety." *Ajaj v. United States*, 293 F. App'x 575, 582 (10th Cir. 2008). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a *reckless* state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person*." Daniels v. Williams*, 474 U.S. 327, 332 (1986). "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

In order to state a claim for an Eighth Amendment violation, Plaintiff's complaint must demonstrate that two elements can be satisfied. These elements consist of the following: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the prison officials acted with a sufficiently culpable state of mind. *Castillo v. Day*, 790 F.3d 1013, 1018-1019 (10th Cir. 2015). Under the objective component, the deprivation must be sufficiently serious, with the prison official's act or omission resulting in the denial of the minimal civilized measure of life's necessities. *Farmer v. Brennan,* 511 U.S. 825*,* 834 (1994). Under the subjective component, deliberate indifference is established only when a prison official knows that an inmate

faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate that harm. *Id.* at 837-38. *See also Callahan v. Poppell,* 471 F.3d 1155, 1159 (10th Cir. 2006). Specifically, under the subjective prong, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm to the prisoner exists, and he must also draw the inference." *Id.* at 837.

In this case, Plaintiff claims that his rights were violated when he was assaulted by gang members who were improperly housed with him. However, in *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) the Tenth Circuit noted that placement of an inmate in a prison cell of a prisoner with members of another gang does not rise to the level of an Eighth Amendment violation when there was no subjective awareness by Defendant of risk. *See also Blankenship v. Meachum*, 840 F.2d 741, 742-43 (10th Cir. 1988), wherein the Tenth Circuit held that inadvertence or good faith error in failing to protect an inmate is not sufficient for liability. Thus, Plaintiff has failed to sufficiently allege that Defendants knew he was in danger of being assaulted by inmates who had tampered with their locks[3] and disregarded the known risk of harm. Accordingly, Plaintiff has failed to satisfy the subjective component of the deliberate indifference analysis. At most, Plaintiff's criticisms are best categorized as negligence claims and therefore do not rise to the level of a constitutional violation. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

---

[3] The investigation into this matter indicates Plaintiff was attacked by inmates who had been assigned to the segregated housing unit (unit A) after they tampered with their cell lock which allowed them to run from their pods to assault Plaintiff. Plaintiff was assigned to unit C at this time. Doc. 22 (Special Report), Attachment 3, pages 20-25.

8

The United States Supreme Court has held that prison officials retain broad discretion and authority over the housing assignment of inmates. *Hewitt v. Helms*, 459 U.S. 460, 467-68 (1983), overruled on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995). *See also Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987). This Court's analysis of the issues in this case should not be based on "[its] idea of how best to operate a detention facility." *Rhodes v. Chapman*, 452 U.S. 337, 351 (1981). It should reflect a "balance between judicial respect for the exigencies of running a prison and the 'broad and idealistic concepts of dignity, civilized standards, humanity and decency' embodied in the Eighth Amendment." *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)) (internal citations omitted). For the foregoing reasons, Plaintiff has failed to state a claim for deliberate indifference and his claims against Defendants must be dismissed.

## PROPOSITION III

## PLAINTIFF'S CONSPIRACY CLAIM MUST FAIL.

Plaintiff alleges that Defendants conspired to place him in harm's way by housing him with dangerous inmates. However, a conspiracy itself is not actionable under 42 U.S.C. § 1983. In *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990), the Tenth Circuit confirmed that in order to prevail on such a claim, Plaintiff must establish two elements: an actual conspiracy among Defendants acting under color of state law and an actual deprivation of the constitutional rights of Plaintiff. "Thus, we join those courts which have recognized that to recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Id*. *Dixon* also emphasized that the

"essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." *Id*. Specifically, a conspiracy under § 1983 requires that the plaintiff prove both the existence of a conspiracy and the deprivation of a constitutional right. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995).

In order to prove a conspiracy in violation of 42 U.S.C. § 1985(3), Plaintiff must show (1) a conspiracy; (2) to deprive Plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) a resulting injury or deprivation. *Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). The conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* Section 1985(3) does not "reach conspiracies motivated by an economic or commercial bias." *Tilton,* 6 F.3d at 686(citing *United Bhd. of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 837 (1983)). "Discriminatory purpose, [the Supreme Court] said, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, nor merely in spite of, its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271-272 (1993) (internal quotation marks and citation omitted). Further, the conspiracy must be "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id.* at 267–8 (internal quotation marks and citation omitted); *Tilton,* 6 F.3d at 686.

Plaintiff's complaints clearly fail to state a viable claim for any unconstitutional conspiracy. While Plaintiff alleges he was harmed by a group of inmates of another race,

he does not articulate that Defendants' conduct was undertaken in order to bring about a racially-charged attack. To the extent that Plaintiff suggests Defendants conspired with each other while acting under color of state law, it is well settled that a governmental entity "cannot conspire with itself." *Brasier v. City of Tulsa,* 268 F.2d 558, 559 (10th Cir. 1959). Accordingly, there can be no finding of any conspiracy among Defendants acting color of law or otherwise, and Plaintiff's 42 U.S.C. § 1983 and/or 1985 conspiracy claim must fail.

## PROPOSITION IV

## PLAINTIFF'S HOUSING CLAIMS MUST FAIL.

Plaintiff complains that he was unconstitutionally housed with inmates who were of another race (Native American) and thus members of the Indian Brotherhood prison gang. However, Plaintiff cites no specific factual support for his claim that was improperly classified under the applicable policy. Specifically, inmates are not segregated according to race. DOC Policy OP-030110 (Inmate Housing) at part I.B.1. Special Report, Attachment 22, page 98. *See also* Plaintiff's Custody Assessment Scales at Attachment 6, pages 57-63, which indicate that Plaintiff was housed properly according to policy. *See also* DOC Policy OP-060103 (Male Custody Assessment Procedures) at Attachment 4, pages 26-44. Furthermore, the investigation into this matter **_does not_** indicate that the inmates in question were improperly housed in the general population but were, in fact, in lockdown cells on unit A and were only able to gain access to Plaintiff by tampering with their locks. Special Report, Attachments 3, 12, 13, 14 and 15. Doc. 22, pages 19-25, 116-127. (Plaintiff was housed away from his attackers in unit C. *Id.* at Attachment 3, page 22.) Thus, any allegation that the attacking inmates were improperly housed together with Plaintiff is not supported by the record. Finally, it is well settled that Plaintiff

11

does not have a clear legal right to be housed in any particular manner. *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976); *Twyman v. Crisp*, 584 F.2d 352, 356 (10th Cir. 1978). *See also Bailey v. Shillinger,* 828 F.2d 651, 653 (10th Cir. 1987). In fact, the United States Supreme Court has stated that prison officials retains broad discretion and authority over the housing assignment of inmates. *Hewitt v. Helms*, 459 U.S. 460, 467-68 (1983), *receded from on other grounds, Sandin v. Conner*, 515 U.S. 472 (1995). The United States Supreme Court has also said that prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices which, in their judgment, are needed to preserve internal order and discipline and to maintain institutional security. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Plaintiff has failed to meet the requirement of showing that he had a constitutionally protected interest in incarceration in a particular facility or to a particular housing assignment. Thus, Plaintiff's claims must fail.

## PROPOSITION V

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

A public official or employee is entitled to qualified immunity unless "clearly established" federal rights of which a reasonable person would have known are shown to have been violated. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Clearly established" is predicated on a finding that in light of pre-existing law the unlawfulness is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. It is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 527 (1985). It is effectively lost if a case is erroneously permitted to proceed to trial. *Hannula v. City of Blakely,* 907 F.2d 129, 130 (10th Cir. 1990).

12

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe,* 672 F.3d 1185, 1191 (10th Cir. 2012).

Whether qualified immunity exists is a question of law to be decided by the trial court. *England v. Hendricks,* 880 F.2d 281, 283 (10th Cir. 1989). "To determine whether a plaintiff can overcome the qualified immunity defense, 'first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right.'" *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1239 (10th Cir. 2003) (quoting *Garramone v. Roma,* 94 F.3d 1446, 1449 (10th Cir. 1996)).

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992). *Accord, Roska,* 328 F.3d at 1248. The contours of the invoked right must be sufficiently clear such that objectively reasonable state officers would understand that what they are doing violates that right. *Roska,* 328 F.3d at 1247 (citing *Anderson v. Creighton,* 483 U.S. 635 (1987)). "[T]he touchstone of [this] inquiry is whether the officers [were] on notice [that] their conduct [was] unlawful." *Id.* at 1248. (citations and quotations omitted). Thus, if the plaintiff has alleged a constitutional violation <u>and</u> has met his burden to establish that the law on the

13

subject is clearly established, plaintiff must further show that a reasonable official would have known that his actions would violate clearly established law.

> In considering the "reasonable state actor," we must keep in mind that qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.' *Malley v. Briggs,* 475 U.S. 335, 341 (1986) (emphasis added). Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id. at 341.*

*Id.* at 1251.

For reasons more fully set forth above, Plaintiff can't meet his burden of demonstrating that Defendants violated his constitutional rights to be housed in any particular manner. In the alternative, Plaintiff cannot meet his burden of demonstrating that the law is clearly established such that Defendants should have been on notice that their housing practices were unconstitutional or would lead to the harm sustained by Plaintiff. For the foregoing reasons, Defendants are entitled to qualified immunity.

## PROPOSITION VI

### PLAINTIFF'S OFFICIAL CAPACITY CLAIMS FOR DAMAGES MUST BE DISMISSED.

Plaintiff has named Defendants, in their official capacities, as a parties in this action. However, Plaintiff's claims for damages against Defendants, in their official capacities, must fail. Specifically, any suit against a public official in his or her "official capacity" is treated as a suit against the governmental entity for which the official is an agent. *Hafer v. Melo*, 502 U.S. 21 (1991). However, states and their agencies are not persons under 42 U.S.C. § 1983 and are therefore not subject to suit under the statute. *Will v. Michigan State Police*, 491 U.S. 58 (1989). Therefore, suits against officials in their official capacities cannot be maintained because individuals in their "official capacities"

are not proper parties to a § 1983 action. *Kentucky v. Graham*, 473 U.S. 159 (1985). Furthermore, Defendants, in their official capacities, are immune from any suit for damages. *See Pennhurst State School & Hospital v. Halderman*, 456 U.S. 89, 120 (1984). Accordingly, Plaintiff's claims for damages must be dismissed against Defendants, in their official capacities.

## CONCLUSION

Plaintiff's claims against Defendants Werner, Dowling, McInturf and Pryor must be denied and this action dismissed in its entirety.

Respectfully submitted,

/s/ Kari Y. Hawkins
**KARI Y. HAWKINS, OBA #19824**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: Kari.Hawkins@oag.ok.gov
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing and transmittal by U.S. Mail to the following person who is not an ECF registrant:

Clifford L. Goulsby, DOC # 100814
Dick Conner Correctional Center
129 Conner Road
Hominy, OK 74035
*Plaintiff Pro se*

/s/Kari Y. Hawkins
Kari Y. Hawkins
